[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 14, 2006
THOMAS K. KAHN
CLERK

No. 05-13206
Non-Argument Calendar
_____

D. C. Docket No. 04-00156-CR-CB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHANNON MCCULLOUGH,
a.k.a. Shannon McCullough Boyington,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(February 14, 2006)**

Before ANDERSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Shannon McCullough appeals her convictions for transporting and harboring

an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (iii). We affirm.

In 2003, McCullough and her boyfriend, Rosalio Venegas Sanchez, a Mexican citizen, were living together at McCullough's house in Foley, Alabama. In December of 2003, Venegas returned to Mexico to visit his family. In January of 2004, McCullough traveled to Mexico and helped Venegas obtain a B-2 visitor visa so that he could come back to the United States. McCullough then accompanied Venegas to the border at Hidalgo, Texas. On January 6, 2004, the United States Customs and Border Protection Office ("USCBP") denied Venegas permission to enter the United States because he had previously entered the country illegally. The USCBP cancelled Venegas' visitor visa, informed him that he could not legally enter the United States, and allowed him to return to Mexico.

On March 5, 2004, Senior Border Patrol Agent Kevin Douglas learned that Venegas had returned to Foley, Alabama and was again living with McCullough. Administrative checks revealed that Venegas was not legally admitted into the United States. On May 10, 2004, Douglas stopped Venegas after he left McCullough's residence and questioned him. Venegas told Douglas that he had entered the United States illegally at Hidalgo, Texas in February of 2004. In a sworn written statement, Venegas stated that McCullough, knowing that he was an illegal alien, had picked him up in Houston and paid a smuggler for transporting

2

him to the United States. Douglas later swore in an affidavit that he did not coerce Venegas into providing the statement.

Venegas was informed that he could be charged administratively for violating immigration laws, or he could waive his procedural due process rights and be eligible for an immediate, voluntary return to Mexico. Venegas chose the latter and was returned to Mexico on May 13, 2004. McCullough was indicted on one count of transportation of an illegal alien and one count of harboring and concealing an illegal alien on July 29, 2004.

On November 8, 2004, the government sent a letter to McCullough's attorney, Riguer R. Silva, stating that it had filed for permission for Venegas to reenter the United States as a witness and would pay for his travel and lodging. The government requested that Silva provide additional contact information for Venegas, including his full name, address, telephone numbers, and any unique identifying numbers, before November 12, 2004, so that it could complete his travel arrangements.

On November 12, 2004, McCullough filed a motion to dismiss the indictment, alleging that Agent Douglas had arranged for Venegas to leave the United States before she had an opportunity to depose and cross examine him, compromising her ability to obtain evidence for her defense. In support of her

3

motion, McCullough filed the affidavit of Silva, in which he swore that he had made numerous attempts to contact Venegas in Mexico, but was able to speak with him only once because he did not have a telephone and lived in a remote area without a mailing address. Silva stated that Venegas had told him that the sworn statement he gave to Douglas was false and coerced, and that he had never told Douglas that McCullough knew that he was an illegal alien. Silva further stated that he did not have the resources or time to secure contact information for Venegas.

At a November 30, 2004 hearing on McCullough's motion to dismiss the indictment, the district court stated that it was McCullough's burden to prove that, at the time the government facilitated Venegas' return to Mexico, his testimony would have been favorable to her. The court observed that the government had tried to bring Venegas to the United States for trial. McCullough stated that the four days the government had given her was not enough time to obtain Venegas' contact information, and that she only knew "half" of the information requested by the government. The government responded that it had been in contact with Silva since August or September and had discussed the need for more information about Venegas on several occasions, and that the November 12, 2004 deadline was chosen to give the government enough time to bring Venegas to the United States

4

before the trial, which was scheduled for November 30, 2004. McCullough then argued that the government had acted in bad faith by allowing Venegas to leave. The court responded: "What . . . difference does it make that there was bad faith, arguably, even if everything you say is true and that . . . amounts to bad faith, if in fact at the time the statements he made were favorable to the government?"

The district court entered an order denying McCullough's motion to dismiss the indictment, finding that there was an insufficient basis to support the allegations in the motion. After a bench trial, the district court found McCullough guilty on both counts of the indictment. The district court sentenced McCullough to one day of imprisonment and four months of home confinement.

On appeal, McCullough contends that the district court abused its discretion in denying her motion to dismiss the indictment because she was denied her Sixth Amendment right to confront witnesses when the government facilitated Venegas' return to Mexico. She argues that she was not required to prove that the government had acted in bad faith in allowing Venegas to leave, and that the court erred when it took this factor into consideration. She argues that she made a plausible showing that Venegas' testimony would have been material and favorable because Silva's affidavit established that Venegas would have testified that his statement was coerced and that McCullough had no knowledge that he was

an illegal alien. Finally, she argues that if she must prove bad faith, the government's actions in allowing Venegas to leave exhibited bad faith.

We review a district court's denial of a motion to dismiss an indictment for an abuse of discretion. United States v. Waldon, 363 F.3d 1103, 1108 (11th Cir. 2004), cert. denied, 125 S. Ct. 208 (2004). The Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const., Amend. VI. In United States v. Valenzuela-Bernal, 458 U.S. 858, 872, 102 S. Ct. 3440, 3449 (1982), the Supreme Court considered this issue and concluded that the executive branch's responsibility to execute immigration policy "justifies the prompt deportation of illegal-alien witnesses upon the [e]xecutive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." The Court stated that the mere fact of deportation was not enough for a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment. Id. "A violation of these provisions requires some showing that the evidence lost would be both material and favorable to the defense." Id. In other words, the defendant must show "some reasonable basis to believe that the deported witness would testify to material and favorable facts." United States v. Saintil, 753 F.2d 984, 987 (11th Cir. 1985) (internal marks omitted).

McCullough has not satisfied this burden. First, the record does not show that Venegas was deported. See id. (noting that giving an illegal alien the option of either leaving voluntarily or being detained does not amount to deportation). Venegas, like the illegal alien in Saintil, was given the option of leaving voluntarily or being detained.

Second, it appears that the district court's reason for requiring McCullough to show that Venegas' testimony would have been favorable to her when the government allowed him to leave was based on its concern that the government had not acted in bad faith. The Supreme Court and this Court have suggested that bad faith is an important consideration in determining whether a constitutional violation has occurred. See Valenzuela-Bernal, 458 U.S. at 872; 102 S. Ct. at 3449 (stating that it is permissible for the government to deport an illegal-alien witness if the government has made a good faith determination that the witness possesses no evidence favorable to a criminal defendant); United States v. Avila-Dominguez, 610 F.2d 1266, 1270 (5th Cir. 1980) (noting, upon denying relief, that "the [g]overnment neither acted in bad faith nor purposefully deprived defendants of their rights"). The government did not act in bad faith when it allowed Venegas to leave the United States voluntarily because at that time, Venegas had only provided incriminating statements about McCullough and there was no reason to

7

believe that Agent Douglas had coerced these statements. Furthermore, the government made every effort to procure Venegas' appearance for trial, contacting Silva on several occasions regarding Venegas' contact information.

Because the evidence shows Venegas was not deported and that the government did not act in bad faith in allowing him to leave, the district court did not abuse its discretion by denying McCullough's motion to dismiss the indictment.

**AFFIRMED.**